MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
GERARDO MOTA BAUTISTA, HUGO
BAUTISTA, JUAN LUIS OVANDO
ZEPEDA, JUAN ZEPEDA, JULIO RICARDO
ALVAREZ MACATOMA, LEONCIO
TORRES ACUNA, MARIO MORALES
ROJAS, and OMAR RODRIGUEZ,
*individually and on behalf of others similarly*
*situated,*

                        *Plaintiffs*,

         -against-

COUNTYWIDE BUILDERS, INC.  (D/B/A
COUNTYWIDE BUILDERS), NOBLE
CONSTRUCTION GROUP, LLC (D/B/A
NOBLE CONSTRUCTION GROUP),
EDWARD M. GEERLOF JR., MAYER
WEBER, JORDAN GARRIDO, MIKE
GARRIDO, and MARTIN DOE (a/k/a PERU)

                      *Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Gerardo Mota Bautista, Hugo Bautista, Juan Luis Ovando Zepeda, Juan Zepeda,

Julio Ricardo Alvarez Macatoma, Leoncio Torres Acuna, Mario Morales Rojas, and Omar

Rodriguez , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by

and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief,

and as against Countywide Builders, Inc. (d/b/a Countywide Builders), Noble Construction Group,

LLC (d/b/a Noble Construction Group), ("Defendant Corporations"), Edward M. Geerlof Jr.,

Mayer Weber,   Jordan Garrido, Mike Garrido, and Martin Doe (a/k/a Peru) ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Countywide Builders, Inc. (d/b/a Countywide Builders), Noble Construction Group, LLC (d/b/a Noble Construction Group), Edward M. Geerlof Jr., Mayer Weber, Jordan Garrido, Mike Garrido, and Martin Doe (a/k/a Peru).

2.       Defendants own, operate, or control two construction companies, located at 100 Beard Street, Brooklyn, New York 11231 under the name "Countywide Builders" and under the name "Noble Construction Group".

3.      Upon information and belief, individual Defendants Edward M. Geerlof Jr., Mayer Weber, Jordan Garrido, Mike Garrido, and Martin Doe (a/k/a Peru) serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporations as a joint or unified enterprise.

4.      Plaintiffs were employed as construction workers in Manhattan and Brooklyn at the construction corporations located at 100 Beard Street, Brooklyn, New York 11231 and 1 Harmon Plaza #1004, Secaucus, New Jersey 07094.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Further, Plaintiffs were employed by Defendants to do work in this district.

## PARTIES

*Plaintiffs*

14.     Plaintiff Gerardo Mota Bautista ("Plaintiff Mota" or "Mr. Mota") is an adult individual residing in Bronx County, New York.

15.     Plaintiff Mota was employed by Defendants at County Wide and Noble Construction from approximately May 15, 2019 until on or about August 7, 2019.

16.     Plaintiff Hugo Bautista ("Plaintiff Bautista" or "Mr. Bautista") is an adult individual residing in Kings County, New York.

17.     Plaintiff Bautista was employed by Defendants at County Wide Construction from approximately March 26, 2019 until on or about August 17, 2019.

18.     Plaintiff Juan Luis Ovando Zepeda ("Plaintiff Ovando" or "Mr. Ovando") is an adult individual residing in Bronx County, New York.

19.     Plaintiff Ovando was employed by Defendants at County Wide Construction from approximately February 2019 until on or about August 7, 2019.

20.     Plaintiff Juan Zepeda ("Plaintiff Zepeda" or "Mr. Zepeda") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Zepeda was employed by Defendants at County Wide Construction from approximately February 2019 until on or about August 2019.

22.     Plaintiff Julio Ricardo Alvarez Macatoma ("Plaintiff Alvarez" or "Mr. Alvarez") is an adult individual residing in Union County, New Jersey.

23.     Plaintiff Alvarez was employed by Defendants at County Wide Construction from approximately March 4, 2019 until on or about August 9, 2019.

24.     Plaintiff Leoncio Torres Acuna ("Plaintiff Torres" or "Mr. Torres") is an adult individual residing in Bronx County, New York.

25.    Plaintiff Torres was employed by Defendants at County Wide Construction from approximately March 2019 until on or about July 2019.

26.    Plaintiff Mario Morales Rojas ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Queens County, New York.

27.    Plaintiff Morales was employed by Defendants at County Wide Construction from approximately March 2019 until on or about August 8, 2019.

28.    Plaintiff Omar Rodriguez ("Plaintiff Rodriguez" or "Mr. Rodriguez") is an adult individual residing in Queens County, New York.

29.    Plaintiff Rodriguez was employed by Defendants at County Wide Construction from approximately March 26, 2019 until on or about August 7, 2019.

*Defendants*

30.    At all relevant times, Defendants owned, operated, or controlled two construction companies, located at 100 Beard Street, Brooklyn, New York 11231 under the name "Countywide Builders" and at 1 Harmon Plaza #1004, Secaucus, New Jersey 07094 under the name "Noble Construction Group".

31.    Upon information and belief, Countywide Builders, Inc. (d/b/a Countywide Builders) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 100 Beard Street, Brooklyn, New York 11231.

32.    Upon information and belief, Noble Construction Group, LLC (d/b/a Noble Construction Group) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1 Harmon Plaza #1004, Secaucus, New Jersey 07094.

33.    Defendant Edward M. Geerlof Jr. is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Edward M. Geerlof Jr. is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Edward M. Geerlof Jr. possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.    Defendant Mayer Weber is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mayer Weber is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Mayer Weber possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.    Defendant Jordan Garrido is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jordan Garrido is sued individually in his capacity as a manager of Defendant Corporations. Defendant Jordan Garrido possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.     Defendant Mike Garrido is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mike Garrido is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Mike Garrido possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Martin Doe (a/k/a Peru) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Martin Doe (a/k/a Peru) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Martin Doe (a/k/a Peru) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

38.     Defendants operate two construction companies located in multiple construction projects throughout New York City.

39.     Individual Defendants, Edward M. Geerlof Jr., Mayer Weber, Jordan Garrido, Mike Garrido, and Martin Doe (a/k/a Peru) possess operational control over Defendant Corporations,

possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

40.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

43.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.    Upon information and belief, Individual Defendants Edward M. Geerlof Jr., Mayer Weber, Mike Garrido, and Martin Doe (a/k/a Peru) operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

   a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

   b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

45.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

46.    During 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

47.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporations on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

48.    Plaintiffs are former employees of Defendants who were employed as construction workers. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Gerardo Mota Bautista*

49.    Plaintiff Mota was employed by Defendants from approximately May 15, 2019 until on or about August 7, 2019.

50.     Defendants employed Plaintiff Mota as a construction worker.

51.     Plaintiff Mota regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

52.     Plaintiff Mota's work duties required neither discretion nor independent judgment.

53.     Throughout his employment with Defendants, Plaintiff Mota regularly worked in excess of 40 hours per week.

54.     From approximately May 15, 2019 until on or about August 7, 2019, Plaintiff Mota worked at a construction site in Manhattan from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays two weeks a month (typically 56.5 hours per week).

55.     From approximately May 15, 2019 until on or about August 7, 2019, Plaintiff Mota worked in a construction site in Manhattan from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 5:30 p.m. on Saturdays two weeks a month (typically 61 hours per week).

56.     Throughout his employment, Defendants paid Plaintiff Mota his wages in cash.

57.     From approximately May 2019 until on or about August 7, 2019, Defendants paid Plaintiff Mota $23 per hour.

58.     For approximately one week and a day, Defendants did not pay Plaintiff Mota any wages for his work.

59.     Although Plaintiff Mota was required to keep track of his time, the time tracking system did not accurately reflect his actual hours worked.

60.     Specifically, every week defendants did not pay Plaintiff Mota for two hours he had worked; Plaintiff Mota complained about this to defendants, but they never did anything about it.

61.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mota regarding overtime and wages under the FLSA and NYLL.

62.    Defendants did not provide Plaintiff Mota an accurate statement of wages, as required by NYLL 195(3).

63.    Defendants did not give any notice to Plaintiff Mota, in English and in Spanish (Plaintiff Mota's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

64.    Defendants required Plaintiff Mota to purchase "tools of the trade" with his own funds—including one harness, one yoyo tool, and a chain.

*Plaintiff Hugo Bautista*

65.    Plaintiff Bautista was employed by Defendants from approximately March 26, 2019 until on or about August 17, 2019.

66.    Defendants employed Plaintiff Bautista as a construction worker.

67.    Plaintiff Bautista regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

68.    Plaintiff Bautista's work duties required neither discretion nor independent judgment.

69.    Throughout his employment with Defendants, Plaintiff Bautista regularly worked in excess of 40 hours per week.

70.    From approximately March 26, 2019 until on or about August 7, 2019, Plaintiff Bautista worked from approximately 7:00 a.m. until on or about 5:30 p.m., Tuesdays through Thursdays, from approximately 7:00 a.m. until on or about 3:30 p.m., Mondays and Fridays, and from approximately 9:00 a.m. until on or about 2:00 p.m., on Saturdays (typically 51 hours per week).

71.    Specifically, from approximately March 26, 2019 until on or about June 2019, Plaintiff Bautista worked at a construction site located in Brooklyn.

72.    Furthermore, from approximately June 2019 until on or about August 7, 2019, Plaintiff Bautista worked at a construction site located in Manhattan.

73.    Throughout his employment, Defendants paid Plaintiff Bautista his wages in cash.

74.    From approximately March 26, 2019 until on or about August 7, 2019, Defendants paid Plaintiff Bautista $30.00 per hour.

75.    For approximately one week, Defendants did not pay Plaintiff Bautista any wages for his work.

76.    Although Plaintiff Bautista was required to keep track of his time, the time tracking system did not accurately reflect his actual hours worked.

77.    Specifically, every week defendants did not pay Plaintiff Bautista for two hours he had worked; Plaintiff Bautista complained about this to defendants, but they never did anything about it.

78.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Bautista regarding overtime and wages under the FLSA and NYLL.

79.    Defendants did not provide Plaintiff Bautista an accurate statement of wages, as required by NYLL 195(3).

80.    Defendants did not give any notice to Plaintiff Bautista, in English and in Spanish (Plaintiff Bautista's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

81.     Defendants required Plaintiff Bautista to purchase "tools of the trade" with his own funds—including one harness, one harness clutch, guided protection chains, one wire holder, and one wire cutter.

*Plaintiff Juan Luis Ovando Zepeda*

82.     Plaintiff Ovando was employed by Defendants from approximately February 2019 until on or about August 7, 2019.

83.     Defendants employed Plaintiff Ovando as a construction worker.

84.     Plaintiff Ovando regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

85.     Plaintiff Ovando's work duties required neither discretion nor independent judgment.

86.     Throughout his employment with Defendants, Plaintiff Ovando regularly worked in excess of 40 hours per week.

87.     From approximately February 2019 until on or about August 7, 2019, Plaintiff Ovando worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays, two weeks per month (typically 52.5 hours per week).

88.     From approximately February 2019 until on or about August 2019, Plaintiff Ovando worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 5:30 p.m., on Saturdays two weeks per month (typically 61 hours per week).

89.     Specifically, throughout his employment, Plaintiff Ovando worked in construction sites located in Brooklyn and Manhattan.

90.     Throughout his employment, Defendants paid Plaintiff Ovando his wages in cash.

91.     From approximately February 2019 until on or about August 2019, Defendants paid Plaintiff Ovando $32.00 per hour.

92.     For approximately three weeks, Defendants did not pay Plaintiff Ovando any wages for his work.

93.     Although Plaintiff Ovando was required to keep track of his time, the time tracking system did not accurately reflect his actual hours worked.

94.     Specifically, every week defendants did not pay Plaintiff Ovando for two hours he had worked; Plaintiff Obando complained about this to defendants, but they never did anything about it.

95.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ovando regarding overtime and wages under the FLSA and NYLL.

96.     Defendants did not provide Plaintiff Ovando an accurate statement of wages, as required by NYLL 195(3).

97.     Defendants did not give any notice to Plaintiff Ovando, in English and in Spanish (Plaintiff Ovando's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

98.     Defendants required Plaintiff Ovando to purchase "tools of the trade" with his own funds—including one drill, pliers, one snipper, one harness, and one tool pouch.

*Plaintiff Juan Zepeda*

99.     Plaintiff Zepeda was employed by Defendants from approximately February 2019 until on or about August 2019.

100.    Defendants employed Plaintiff Zepeda as a construction worker.

101.    Plaintiff Zepeda regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

102.    Plaintiff Zepeda's work duties required neither discretion nor independent judgment.

103.    Throughout his employment with Defendants, Plaintiff Zepeda regularly worked in excess of 40 hours per week.

104.    From approximately February 2019 until on or about August 2019, Plaintiff Zepeda worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays,  one or two weeks per month (typically 52.5 hours per week).

105.    From approximately February 2019 until on or about August 2019, Plaintiff Zepeda worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 5:30 p.m., on Saturdays, two or three weeks per month (typically 61 hours per week).

106.    Specifically, from approximately March 2019 until on or about June 2019, Plaintiff Zepeda worked at a construction site located in Brooklyn.

107.    Furthermore, from approximately June 2019 until on or about August 7, 2019, Plaintiff Zepeda worked in construction sites located in Brooklyn and Manhattan.

108.    Throughout his employment, Defendants paid Plaintiff Zepeda his wages in cash.

109.    From approximately February 2019 until on or about August 7, 2019, Defendants paid Plaintiff Zepeda $40.00 per hour.

110.    For approximately three weeks, Defendants did not pay Plaintiff Zepeda any wages for his work.

111.    Although Plaintiff Zepeda was required to keep track of his time, the time tracking system did not accurately reflect his actual hours worked.

112.    Specifically, every week defendants did not pay Plaintiff Cepeda for two to four hours he had worked; Plaintiff Cepeda complained about this to defendants, but they never did anything about it.

113.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Zepeda regarding overtime and wages under the FLSA and NYLL.

114.    Defendants did not provide Plaintiff Zepeda an accurate statement of wages, as required by NYLL 195(3).

115.    Defendants did not give any notice to Plaintiff Zepeda, in English and in Spanish (Plaintiff Zepeda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

116.    Defendants required Plaintiff Zepeda to purchase "tools of the trade" with his own funds—including a reel, tweezers, pliers, one level, five snippers, one helmet, chains, one harness, one safety harness, and four pairs of boots.

*Plaintiff Julio Ricardo Alvarez Macatoma*

117.    Plaintiff Alvarez was employed by Defendants from approximately March 4, 2019 until on or about August 9, 2019.

118.    Defendants employed Plaintiff Alvarez as a construction worker.

119.    Plaintiff Alvarez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

120.    Plaintiff Alvarez's work duties required neither discretion nor independent judgment.

121.    Throughout his employment with Defendants, Plaintiff Alvarez regularly worked in excess of 40 hours per week.

122.    From approximately March 4, 2019 until on or about August 9, 2019, Plaintiff Alvarez worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 5:30 p.m., on Saturdays (typically 61 hours per week).

123.    Specifically, throughout his employment, Plaintiff Alvarez worked in construction sites located in Brooklyn and Manhattan.

124.    Throughout his employment, Defendants paid Plaintiff Alvarez his wages in cash.

125.    From approximately March 4, 2019 until on or about August 9, 2019, Defendants paid Plaintiff Alvarez $30.00 per hour.

126.    For approximately three weeks, Defendants did not pay Plaintiff Alvarez any wages for his work.

127.    Although Plaintiff Alvarez was required to keep track of his time, the time tracking device did not accurately reflect his actual hours worked.

128.    Specifically, every week defendants did not pay Plaintiff Alvarez for all of the hours he had worked; Plaintiff Alvarez complained about this to defendants, but they never did anything about it.

129.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alvarez regarding overtime and wages under the FLSA and NYLL.

130.    Defendants did not provide Plaintiff Alvarez an accurate statement of wages, as required by NYLL 195(3).

131.    Defendants did not give any notice to Plaintiff Alvarez, in English and in Spanish (Plaintiff Alvarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

132.    Defendants required Plaintiff Alvarez to purchase "tools of the trade" with his own funds—including one harness, a life line, one chain, pliers, wire cutters, tape, and one level.

*Plaintiff Leoncio Torres Acuna*

133.    Plaintiff Torres was employed by Defendants from approximately March 2019 until on or about July 2019.

134.    Defendants employed Plaintiff Torres as a construction worker.

135.    Plaintiff Torres regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

136.    Plaintiff Torres's work duties required neither discretion nor independent judgment.

137.    Throughout his employment with Defendants, Plaintiff Torres regularly worked in excess of 40 hours per week.

138.    From approximately March 2019 until on or about May 2019, Plaintiff Torres worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:30 p.m., on Saturdays (typically 61 hours per week).

139.    From approximately June 2019 until on or about July 2019, Plaintiff Torres worked every week from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays through Fridays and twice a month he also worked from approximately 8:00 a.m. until on or about 4:30 p.m., on Saturdays (typically 52.5 to 61 hours per week).

140.    Specifically, from approximately March 2019 until on or about June 2019, Plaintiff Torres worked at a construction site in Brooklyn.

141.    Furthermore, from approximately June 2019 until on or about August 7, 2019, Plaintiff Torres worked in construction sites in both Manhattan and Brooklyn.

142.    Throughout his employment, Defendants paid Plaintiff Torres his wages in cash.

143.     From approximately March 2019 until on or about July 2019, Defendants paid Plaintiff Torres $30.00 per hour.

144.     For approximately two weeks, Defendants did not pay Plaintiff Torres any wages for his work.

145.     Although Plaintiff Torres was required to keep track of his time, Defendants' time tracking system did not accurately reflect his actual hours worked.

146.     Specifically, every week defendants did not pay Plaintiff Torres for all of the hours he had worked; Plaintiff Torres complained about this to defendants, but they never did anything about it.

147.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Torres regarding overtime and wages under the FLSA and NYLL.

148.     Defendants did not provide Plaintiff Torres an accurate statement of wages, as required by NYLL 195(3).

149.     Defendants did not give any notice to Plaintiff Torres, in English and in Spanish (Plaintiff Torres's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

150.     Defendants required Plaintiff Torres to purchase "tools of the trade" with his own funds—including one measuring tape, one hammer, pins, and a satchel for tools.

*Plaintiff Mario Morales Rojas*

151.     Plaintiff Morales was employed by Defendants from approximately March 2019 until on or about August 8, 2019.

152.     Defendants employed Plaintiff Morales as a construction worker.

153.    Plaintiff Morales regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

154.    Plaintiff Morales's work duties required neither discretion nor independent judgment.

155.    Throughout his employment with Defendants, Plaintiff Morales regularly worked in excess of 40 hours per week.

156.    From approximately March 2019 until on or about August 8, 2019, Plaintiff Morales worked from approximately 7:00 a.m. until on or about 5:30 p.m., four days a week and from approximately 7:00 a.m. until on or about 8:00 p.m., one day a week one week per month (typically 55 hours per week).

157.    From approximately March 2019 until on or about August 8, 2019, Plaintiff Morales worked from approximately 7:00 a.m. until on or about 5:30 p.m., four days a week, from approximately 7:00 a.m. until on or about 8:00 p.m., one day a week and from approximately 9:00 a.m. until on or about 5:30 p.m., one day a week, three weeks per month  (typically 63.5 hours per week).

158.    Specifically, from approximately March 2019 until on or about June 2019, Plaintiff Morales worked at a construction site located in Brooklyn.

159.    Furthermore, from approximately June 2019 until on or about August 8, 2019, Plaintiff Morales worked at a construction site located in Manhattan.

160.    Throughout his employment, Defendants paid Plaintiff Morales his wages in cash.

161.    From approximately March 2019 until on or about August 8, 2019, Defendants paid Plaintiff Morales $30.00 per hour.

162.    For approximately one week, Defendants did not pay Plaintiff Morales any wages for his work.

163.    Although Plaintiff Morales was required to keep track of his time, the Defendants time tracking system did not accurately reflect his actual hours worked.

164.    Specifically, every week defendants did not pay Plaintiff Morales for two hours he had worked; Plaintiff Morales complained about this to defendants, but they never did anything about it.

165.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

166.    Defendants did not provide Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

167.    Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

168.    Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including one yoyo, one harness, one laser, two pairs of boots, measuring tools, chop lines, and clothes.

*Plaintiff Omar Rodriguez*

169.    Plaintiff Rodriguez was employed by Defendants from approximately March 26, 2019 until on or about August 7, 2019.

170.    Defendants employed Plaintiff Rodriguez as a construction worker.

171.    Plaintiff Rodriguez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

172.    Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

173.    Throughout his employment with Defendants, Plaintiff Rodriguez regularly worked in excess of 40 hours per week.

174.    From approximately March 26, 2019 until on or about August 7, 2019, Plaintiff Rodriguez worked from approximately 7:00 a.m. until on or about 5:30 p.m., four days a week, from approximately 7:00 a.m. until on or about 7:30 p.m., one day a week, and from approximately 9:30 a.m. until on or about 3:30 p.m., one day a week (typically 61 hours per week).

175.    Specifically, from approximately March 26, 2019 until on or about April 2019, Plaintiff Rodriguez worked at a construction site located in Brooklyn.

176.    Furthermore, from approximately April 2019 until on or about August 7, 2019, Plaintiff Rodriguez worked at a construction site located in Manhattan.

177.    Throughout his employment, Defendants paid Plaintiff Rodriguez his wages in cash.

178.    From approximately March 26, 2019 until on or about August 7, 2019, Defendants paid Plaintiff Rodriguez $30.00 per hour.

179.    For approximately one week and one day, Defendants did not pay Plaintiff Rodriguez any wages for his work.

180.    Although Plaintiff Rodriguez was required to keep track of his time, the Defendants' time tracking system did not accurately reflect his actual hours worked.

181.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rodriguez regarding overtime and wages under the FLSA and NYLL.

182.    Defendants did not provide Plaintiff Rodriguez an accurate statement of wages, as required by NYLL 195(3).

183.     Defendants did not give any notice to Plaintiff Rodriguez, in English and in Spanish (Plaintiff Rodriguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

184.     Defendants required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including one hammer, one guardian fall protection, one harness, one tri-square, pencils, one pair of boots, one helmet, a pair of gloves, and one laser.

*Defendants' General Employment Practices*

185.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

186.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

187.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

188.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

189.     Defendants paid Plaintiffs their wages in cash.

190.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

191.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

192.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

193.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

194.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

195.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

196.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

197.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

198.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

199.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

200.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their

employment, and determined the rate and method of any compensation in exchange for their employment.

201.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

202.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

203.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

204.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

205.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

206.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

207.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

208.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

209.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

210.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

211.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

212.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

213.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

214.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

215.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

217.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

218.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

219.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

220.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

221.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

222.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

223.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

224.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

225.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

226.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

227.     Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

228.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

229.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

230.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

September 23, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Gerardo Mota Bauttista

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     27  de agosto 2019

---

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Hugo Bautista

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          27 de agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Juan Luis Ovando Zepeda

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         27 de agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Juan Zepeda

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    27 de agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                     Telephone: (212) 317-1200
New York, New York 10165                                        Facsimile: (212) 317-1620

---

Faillace@employmentcompliance.com

August 29, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Julio Ricardo Alvarez Marcatoma

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     29 de Agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 28, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Leoncio Torres Acuna

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      28 de agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

——————

Faillace@employmentcompliance.com

August 27, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Mario Morales Rojas

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      27 de Agosto de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Omar Rodriguez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                _Omar Rodriguez_

Date / Fecha:                     27 de agosto 2019