**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GERARDO MOTA BAUTISTA, HUGO BAUTISTA, JUAN LUIS OVANDO ZEPEDA, JUAN ZEPEDA, JULIO RICARDO ALVAREZ MACATOMA, LEONCIO TORRES ACUNA, MARIO MORALES ROJAS, OMAR RODRIGUEZ, and ANTONIO LIMON HERNANDEZ, *individually and on behalf of others similarly situated,* | Case No. 19-cv-8808 |
| | **MEMORANDUM OF LAW IN OPPOSITION TO CARBEN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| *Plaintiffs,* | |
| -against- | |
| COUNTY-WIDE MASONRY CORP., CARBEN INDUSTRIES, INC., CARBEN CONCRETE, INC., CARBEN CONSTRUCTION INC., ANTHONY DERASMO, ANTHONY LOGIUDICE, RONALD BROWNING, and MARTIN DOE a/k/a PERU | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN OPPOSITION TO CARBEN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Preliminary Statement** ................................................................................................. 5

**Statement of Facts** ....................................................................................................... 5

  **I.**    **The Legal Standard for a Motion for Summary Judgment** ........................................ 7

    **A.**   **Genuine Disputes Exist Over Whether the Defendants were Joint Employers** ................... 7

      **1.**   **Whether the Carben Defendants employed the Plaintiffs under the Carter test is subject to disputed material facts** ...................................................................................... 8

      **2.**   **Whether the Carben Defendants employed the Plaintiffs under the Zheng test is subject to disputed material facts** ................................................................................... 10

        *a.*   *Neither the County-Wide Defendants, the Carben Defendants, or Batrume's premises and equipment were used for the plaintiffs' work* .............................................. 11

        *b.*   *Batrume did not shift its employees from one contractor to another* ............................. 11

        *c.*   *A reasonable jury could conclude that the plaintiffs performed a discrete line job that was integral to [the purported joint employer's] process of production* ................................. 12

        *d.*   *Responsibility could pass from one subcontractor to another without material changes* 13

        *e.*   *The degree to which the putative joint employer supervised the Plaintiffs* ..................... 14

        *f.*   *The plaintiffs worked exclusively on the Water Street and Schermerhorn Projects during the relevant time periods* ............................................................................ 14

    **B.**   **To Resolve Factual Disputes in this Case Requires Credibility Determinations** ............... 15

**Table of Authorities**

## Cases

*Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d, 132 (2d Cir. 2008) ....................................................... 7

*Carollo v United Capital Corp.*, 528 F Supp 3d 37 (NDNY 2021) ............................................................ 6

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984) ........................................................... 7

*Curry v P&G Auditors & Consultants*, LLC, 2021 US Dist LEXIS 149402, (SDNY 2021). ..................... 9

*Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) ....................................................................................... 6

*Gil v Pizzarotti, LLC*, 2021 US Dist LEXIS 59668 (SDNY, 2021) ........................................................... 6

*Godlewska*, 916 F. Supp. 2d 264 (EDNY 2013). ..................................................................................... 13

*Greenawalt v. AT&T Mobility LLC*, 642 Fed .Appx. 36 (2d Cir. 2016) ............................................... 8, 10

*Gummo v. Village of Depew*, 75 F.3d 98 (2d Cir. 1996) ........................................................................... 6

*Hart v Rick's Cabaret Intl.,* Inc., 967 F Supp 2d 901 (SDNY 2013). ........................................................ 8

*Jean-Louis v Metro. Cable Communs.,* Inc., 838 F Supp 2d 111 (SDNY 2011). ............................... 11, 12

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ...................................................................... 6

*Lee v Grand Sichuan E. (NY) Inc.*, 2014 US Dist LEXIS 6752 (SDNY 2014). ...................................... 14

*Severino v 436 W. L.L.C.*, 2015 US Dist LEXIS 181564 (SDNY 2015) .................................................. 14

*Suarez v Murray*, 2021 US Dist LEXIS 65016 (SDNY 2021). ................................................................. 9

*Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290 (1985) ...................................................... 7

*United Rentals (N. America), Inc. v. Conti Enters., Inc.*, 293 F. Supp. 3d 447 (S.D.N.Y. 2018) ............... 6

*Ward v. Stewart*, 286 F. Supp. 3d 321 (N.D.N.Y. 2017) .......................................................................... 6

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) .......................................................................................... 6

*Zavala v Pei Elec. Servs. Group Inc.*, 2022 US Dist LEXIS 113675 (SDNY 2022 ................................. 13

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003), .............................................. 9, 10, 11, 12, 13

3

Statutes

29 U.S.C. §203 .............................................................................................................. 7

NY CLS Labor § 198-e(5) ......................................................................................... 11

## Preliminary Statement

The Plaintiffs, Gerardo Mota Bautista, Hugo Bautista, Juan Luis Ovando Zepeda, Juan Zepeda, Julio Ricardo Alvarez Macatoma, Leoncio Torres Acuna, Mario Morales, Omar Rodriguez, and Antonio Limon Hernandez, by their attorneys, CSM Legal, P.C., submit this memorandum of law in opposition to the motion of Defendants County-Wide Masonry Corp. and Anthony Derasmo's Motion for Summary Judgment.

## Statement of Facts[1]

This is an action for money damages brought by the Plaintiffs, who were all employed as construction workers for various amounts of time in 2019 time on two projects:  located at 120 Water Street in Manhattan, New York (the "Water Street Project" or "Water Street Site") and the other located at 70 Schermerhorn Street in Brooklyn, New York (the "Schermerhorn Project" or "Schermerhorn Site"). They contend that they were jointly employed by County-Wide Masonry Corp., Anthony Derasmo, ("The County-Wide Defendants) Carben Industries Inc., Carben Construction Inc., Carben Concrete, Inc., Ronald Browning, and Anthony LoGiudice, ("Carben Defendants") and Martin Doe a/k/a Peru ("Peru."), and that they suffered unpaid overtime wages while working on both projects. The instant motion is being brought by the Carben Defendants, seeking summary judgment on the issue of whether the Carben Defendants employed the Plaintiffs as a matter of law.

Anthony LoGiudice and Ronald Browning are principals of the Carben corporate defendants (Carben 56.1 Statement ¶ 3, LoGiudice Dep. 11:20-21, 47:5-8). The County-Wide

---

[1] This memorandum will make reference to County-Wide's Rule 56.1 Statement with Plaintiffs' Statement of Additional Facts ("CW Rule 56.1 Statement") (Docket No. 154), Carben's Rule 56.1 Statement and Exhibits (Docket No. 142) with counterstatement containing Plaintiffs' Statement of Additional Facts (Docket No. 147.)

Defendants entered into a contract with a company called the Rinaldi Group to provide, *inter alia,* labor to the job site located at 120 Water St. (Carben Rule 56.1 Statement ¶ 17, Ex. L, par. 1.1). The County-Wide Defendants entered into a contract with a company called Noble Construction to provide, *inter alia,* labor to the job site located at 70 Schermerhorn St. (Carben Rule 56.1 Statement, ¶ 19, Ex. M par. 1.1). The County-Wide Defendants allege that they then entered into subcontracts with the Carben Defendants under for work under these contracts, including, *inter alia,* the supplying of labor to these job sites. (Carben 56.1 Statement ¶ 16, Ex. L, 19 Ex. M,).The Carben Defendants then go on to claim that they in turn entered into a subcontract with a company called "Batrume Industries"[2]. (Carben Rule 56.1 Statement ¶, Ex. N. LoGiudice Deposition T26:8-10, T34:22-35:23). The testimony of the Plaintiffs, without exception, is that they worked for County-Wide on these two projects. (Carben Rule 56.1 Statement). In the instant action, we are dealing with several layers of contracts. First, between the general contractors (Rinaldi Group and Noble Construction) and County-Wide. Second, between County-Wide and Carben. Third, between Carben and Batrume.

The Carben Defendants argue, in pertinent part, that the facts of the case point to the Plaintiffs being employed by County-Wide, and to the extent it bore any responsibility for the employment of the Plaintiffs, it passed off that responsibility to Batrume. It simply does not stand to reason that the Plaintiffs could have been employed jointly by only County-Wide and Batrume, with the Carben Defendants – the entities which represent the only connection between these two companies - bearing no responsibility. It is the Plaintiffs' position that they were jointly employed by County-Wide and Carben.

### Argument

---

[2] The Carben Defendants filed third party claims against Batrume Industries. (Docket No. 87). Batrume Industries failed to appear. (Docket No. 120)

## I.      The Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate only when, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Gil v Pizzarotti, LLC*, 2021 US Dist. LEXIS 59668, at \*8 (SDNY, 2021). A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. "*[I]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party that supports a finding that a material factual dispute exists, summary judgment is improper." *United Rentals (N. America), Inc. v. Conti Enters., Inc.,* 293 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (citing *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996). "Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Carollo v United Capital Corp.*, 528 F Supp 3d 37, 48 (NDNY 2021) quoting *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). On a summary judgment motion, "[t]he Court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment").

### A.  Genuine Disputes Exist Over Whether the Defendants were Joint Employers

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203 "The Supreme Court has recognized that `broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)). Accordingly, the Supreme Court has "consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Id.* The determination of whether an employer-employee relationship exists under FLSA is based on an "economic reality" test taking account of the totality of the circumstances. *Id.* at 104.

1. **Whether the Carben Defendants employed the Plaintiffs under the Carter test is subject to disputed material facts**

In *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), the Second Circuit identified four factors for determining the of a putative employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d, 132, 142 (2d Cir. 2008) (quoting *Carter*, 735 F.2d at 12). These factors do not constitute "a rigid rule for the identification of a FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 143. Formal control "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may

be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do [] not diminish the significance of its existence." *Hart v Rick's Cabaret Intl.,* Inc., 967 F Supp 2d 901, 939 (SDNY 2013).

*Carter* "defines employment more narrowly than FLSA requires, [therefore] satisfying this test is sufficient, but not necessary, to show joint employment." *Greenawalt v. AT&T Mobility LLC*, 642 Fed .Appx. 36, 37 (2d Cir. 2016).

An examination of the *Carter* factors with regard to the Plaintiffs' work on the Water Street and Schermerhorn projects shows that the factors are subject to disputed material facts – specifically, the identity of their foreman, to whom he reported, for whom he worked, and for whom the persons to whom he reported worked. The Plaintiffs have stated that they were hired and supervised on both projects by man named Martin, last name unknown, who went by the nickname "Peru." (Carben Rule 56.1 Statement ¶ 7; Exhibit 7, Gerardo Bautista Dep.,T28:6-30:4) (Carben Rule 56.1 Statement ¶ 9; Exhibit E, Ovando Zepeda Dep., T11:23-12:4; 15:8-16; T19:24-21:9) (Carben Rule 56.1 Statement ¶ 12; Exhibit H, Acuna Dep. Transcript, T12:17-24; T14:7-14, T17:4-5) (Carben Rule 56.1 Statement ¶ 13; Exhibit I, Rojas Dep. T11:23-12:12; T15:13-14, T22:3-5) (Carben Rule 56.1 Statement ¶1 4; Exhibit J, Rodriguez Dep., T15:21-16:17, T18:11-13, T21:11-12).) Peru was sued as a defendant in this lawsuit, but has not appeared. There is no consistent, undisputed answer on whom Peru worked for. Omar Rodriguez testified that Peru worked for Countywide. (Carben Rule 56.1 Statement ¶ 14, Rodriguez Dep., T15:21-16:17) Plaintiff Rojas testified that he believed Peru worked for County-Wide. (Carben 56.1 Statement ¶ 13, Rojas Dep. 12:23-13:9). Anthony Derasmo, County-Wide's principal, testified that he had "no idea" whether Peru worked for Batrume. (CW Rule 56.1 Statement ¶ 54, Derasmo Dep. 65:4-7). County-Wide denies that Peru worked for them. It is thus an open question as to who controlled

Peru, and thus who had functional control over the Plaintiffs' terms and conditions of employment.

**Whether the Carben Defendants employed the Plaintiffs under the *Zheng* test is subject to disputed material facts**

Addressing the Carben Defendants' argument that, to the extent they were employed pursuant to Carben's contracts with County-Wide, the Plaintiffs should be considered to work for sub-subcontractor Batrume, this relationship would be subject to the Second Circuit 's test set forth in *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2d Cir. 2003). This test sets forth a different set of factors in determining whether a manufacturer exercised "functional control" over subcontracted workers and was therefore their employers under the FLSA:

> 1) whether [the manufacturer's] premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the manufacturer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [manufacturer] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [manufacturer].

*Id.* at 72. *Zheng* emphasized that these factors were "nonexclusive and overlapping," *Id.* at 75. As this is a case of "vertical" joint employership, wherein there is a contractor-subcontractor relationship, the *Zheng* test is more relevant. "Vertical joint employment exists where an employee has a primary employer, referred to as an "intermediary employer," but the employee is "economically dependent on" another employer "with regard to the work performed for the" primary employer." *Suarez v Murray*, 2021 US Dist. LEXIS 65016, at *12-13 (SDNY 2021). Courts in this district have held that even where the *Carter* test is not satisfied, the Court should

consider the *Zheng* factors. *See, e.g. Curry v P&G Auditors & Consultants*, LLC, 2021 US Dist LEXIS 149402, at \*11 (SDNY 2021).

An examination of the *Zheng* factors with regard to the Plaintiffs' work on the Water Street and Schermerhorn project shows that the factors are either neutral, or militate in favor of the Plaintiffs.

### a. Neither the County-Wide Defendants, the Carben Defendants, or Batrume's premises and equipment were used for the plaintiffs' work

As set forth above, the Plaintiffs worked at two sites, one ostensibly owned or controlled by the Rinaldi Group, one ostensibly owned or controlled by Noble Construction. As the place of work was not under the control of any of the entities at issue in this case, this factor is neutral.

### b. Batrume did not shift its employees from one contractor to another

There is no evidence in the record that Batrume employed the Plaintiffs pursuant to contracts with any other company besides Carben. The relevant inquiry would be whether the work force employed by Batrume was or could have been sent to work for projects other than those of County-Wide or Carben. *See, e.g. Grenawalt* 642 F App'x at 38). ("But *Zheng* looked to whether the contractor—in this case, A-O—could shift its employees from one employer to another.") The evidence in the record shows only that to the extent that Plaintiffs worked for Batrume, they did so only for these two projects, which were contracted to County-Wide and subcontracted to Carben. Indeed, the Plaintiffs had little to no knowledge of either Carben or Batrume prior to the instant action. (Carben 56.1 Statement, ¶ 9, Ovando-Zepeda Dep. T10:5-10, Carben 56.1 Statement, ¶ 12, Acuna Dep. T9:25-11:10, Carben 56.1 Statement, ¶ 13, Rojas Dep. T26:7-8). Had they been moved, as a group, by Batrume to another job that did not involve County-Wide or Carben, it can be inferred that they at least would have heard this company.

### c. *A reasonable jury could conclude that the plaintiffs performed a discrete line job that was integral to [the purported joint employer's] process of production*

It is well settled that this factor does not easily apply outside of the manufacturing context. *See, e.g. Jean-Louis v Metro. Cable Communs.*, Inc., 838 F Supp 2d 111, 134 (SDNY 2011). Courts in this Circuit have indicated that in applying this factor "both industry custom and historical practice should be consulted" since "insofar as the practice of using subcontractors to complete a particular task is widespread, it is unlikely to be a mere subterfuge to avoid complying with labor laws." *Id.* While perhaps this sort of subcontracting relationship is industry standard, *Zheng* also cautions that "the very prevalence of a custom may 'be attributable to widespread evasion of labor laws." 355 F.3d at 73-74.

In 2021, the New York State legislature amended the New York Labor Law to read

In the case of an action against a subcontractor, the contractor shall be considered jointly and severally liable for any unpaid wages, benefits, wage supplements, and any other remedies available pursuant to the requirements of section one hundred ninety-eight of this article.

NY CLS Labor § 198-e(5)

While this provision was not in effect at the time the damages in this case accrued, the fact that the State of New York deemed wage theft in the construction industry to be a problem worth enacting such legislation should serve as evidence of that "widespread evasion of labor laws" contemplated by *Zheng*. The fact that the solution to this problem was to automate joint liability as between contractors and subcontractors indicates that the State of New York observed that one of the issues with wage theft could be attributable to contractors being permitted to disavow responsibility for their subcontractors. As such, the fact that subcontracting out labor is common in the construction context should not weigh in favor of Carben.

To the extent that this factor is applicable outside the manufacturing context, it should weigh in favor of the Plaintiffs. The jobs that are the subject of this case are one in which the Carben Defendants were contracted to perform work on the job sites at 120 Water and 70 Schermerhorn were construction jobs. (Carben Rule 56.1 Statement ¶ 16, Ex. L, ¶ 18, Ex. M). The Plaintiffs were construction workers at both sites. (CW Rule 56.1 Statement, Plaintiffs' Statement of Additional Facts ¶ 3, Ovando-Zepeda Dep. 10:5-10, Rodriguez Dep. 13:11-14, Mota Bautista Dep. 22:8-12, Acuna Dep. 10:11-14, Rojas Dep. 10:18-23). In the context of the instant action, Plaintiffs' labor was indeed integral to Carben's business. The contracts between the respective County-Wide and Carben explicitly state that Carben was to supply labor, and each set forth restrictions and guidelines under which Carben was to supply this labor (Carben Rule 56.1 Statement ¶ 16, Ex. L, ¶ 18, Ex. M) The work that both County-Wide and Carben were contracted to perform on these projects could not have been accomplished without the labor that was provided by Plaintiffs and thus, this factor should weigh in favor of a finding of joint employership.

### d. Responsibility could pass from one subcontractor to another without material changes

The proper inquiry is "…if the putative joint employer hired one contractor rather than another, the *same* employees would continue to do the *same* work in the *same* place." *Jean-Louis*, 838 F. Supp. 2d at 135 (emphasis original) (quoting *Zheng*, 355 F.3d at 74 n. 11). In effect, the query is, if the Carben Defendants subcontracted out their responsibilities on the 120 Water and 70 Schermerhorn sites to a company, other than Batrume, would the same employees continue to do the same work in the same place. To the extent that the Plaintiffs can be said to have been employed by Batrume, they were not prior to the Schermerhorn and Water Street Projects (as can be inferred by the fact that they had not heard of either Batrume (Carben 56.1 Statement, ¶ 9, Ovando-Zepeda Dep. T10:5-10, Carben 56.1 Statement, ¶ 12, Acuna Dep. T9:25-11:10, Carben

56.1 Statement, ¶ 13, Rojas Dep. T26:7-8)), it seems just as likely that they could have been hired by this hypothetical subcontractor. This factor should thus be considered neutral.

### e. *The degree to which the putative joint employer supervised the Plaintiffs*

Courts in this District have ruled that "The inquiry under this factor is 'largely the same' as the inquiry under the second [formal control] factor." *Godlewska*, 916 F. Supp. 2d 264 (EDNY 2013). As this is subject to disputed facts, a further analysis of which is set forth above, it should be considered neutral for the purposes of this inquiry.

### f. *The plaintiffs worked exclusively on the Water Street and Schermerhorn Projects during the relevant time periods*

Courts in this Circuit have found that this sixth *Zheng* factor is satisfied where the Plaintiffs worked on site for the putative joint employer; i.e., that the subcontractor in question did not send them to work for other contractors concurrently. *See, e.g. Zavala v Pei Elec. Servs. Group Inc.*, 2022 US Dist. LEXIS 113675, at *34-35 (SDNY 2022) (Finding in favor of Plaintiffs where they showed that they worked exclusively on sites for the putative joint employer during the relevant time period), *Godlewska* at 265 (EDNY 2013) (Finding that this factor weighed in favor of plaintiffs where they worked full time for the purported joint employer's patients for the relevant time periods). To the extent that Plaintiffs can be said to have been employed by Batrume, they were only employed as such pursuant to Carben's contracts with County-Wide.  Plaintiffs have provided sufficient testimony that this is the case.  It has not been alleged by either the Plaintiffs or either set of Defendants that the Plaintiffs worked on any other projects for Batrume while they were working on either the Schermerhorn or Water Street projects. Both the allegations in the Complaint and the testimony of the Plaintiffs indicate that they worked on these projects full time during the relevant time period. The Plaintiffs had never heard of Batrume. (Carben 56.1

Statement, ¶ 9, Ovando-Zepeda Dep. T10:5-10, Carben 56.1 Statement, ¶ 12, Acuna Dep. T9:25-11:10, Carben 56.1 Statement, ¶ 13, Rojas Dep. T26:7-8). If they had been sent to other contractors' sites by either of these companies, it can be inferred that they at least would have known their names. This factor thus weighs in favor of the Plaintiffs.

**B. To Resolve Factual Disputes in this Case Requires Credibility Determinations**

It is well settled that where there is conflicting testimony in case, there exists a genuine issue of material fact. *Severino v 436 W. L.L.C.,* 2015 US Dist. LEXIS 181564, at *24 (SDNY 2015) The Plaintiffs contend that, at minimum, the record reflects genuine disputes of material facts. The record as it stands reflects discrepancies between the testimony of the Countywide Defendants, the testimony of the Carben Defendants and that of the Plaintiffs.

Where, "…the parties' contradictory facts are supported with adequate testimonial evidence and thus require a credibility determination, which is the proper function of a jury, not the Court. *Lee v Grand Sichuan E. (NY) Inc*., 2014 US Dist. LEXIS 6752, at *21-22 (SDNY 2014). As set forth above, a large part of the record in the instant case consists of the statements of the parties, whether from their depositions or in declarations. The testimony of the Defendants is largely self-serving and intended to disclaim any responsibility or knowledge of the labor involved in the Water Street or Schermerhorn Projects. Many of these statement contradict each other. For example, Anthony Derasmo testified that Ronald Browning was responsible for the issuance of employee badges bearing the name "County-Wide" to the Plaintiffs. (CW Rule 56.1 Statement, ¶ 46, Derasmo Dep. 54:19-55:17, 61:16-62:5) while Messrs. Browning and LoGiudice testified that he had no involvement in it (CW Rule 56.1 Statement ¶ 46, Browning Dep. 37:6-12, LoGiudice Dep. 36:5-9). Anthony LoGiudice testified that he and Ronald Browning shared responsibility for hiring, firing, and supervising employees while Mr. Browning testified that it was exclusively Mr.

LoGiudice's responsibility. (Browning Dep. 45:7-18). Anthony LoGiudice testified that Carben had no responsibility for the workers (LoGiudice Dep. 26:3-3-7) for the Water Street or Schermerhorn Projects while each had signed contracts on behalf of their companies made them responsible for providing labor to the sites and providing supervision to them. (Ex. M, ¶ 23.1, Ex L. ¶ 23.1)  By contrast, Carben's contracts with Batrume, which they allege passes on any responsibility for workers hired, defines the scope of [Batrume's] work as "Provide labor to erect Superstructure concrete" (Ex. O, p. 9, Ex. P. p. 9).  A reading of the contracts shows that Carben accepted more responsibility than it then delegated. As such, even to the extent that the Plaintiffs were employed jointly by Batrume, Carben cannot be said to have absolved itself of liability for their claims.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court deny the Carben Defendants' Motion for Summary Judgment.


Dated: New York, New York

      October 6, 2022


                                    CSM LEGAL, P.C.

By:    /s/ Clela Errington           
           Clela A. Errington, Esq.
           60 East 42nd Street, Suite 4510
           New York, New York 10165
           Telephone: (212) 317-1200
           Facsimile: (212) 317-1620
           *Attorneys for Plaintiffs*