USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _01/04/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERARDO MOTA BAUTISTA, HUGO BAUTISTA, JUAN LUIS OVANDO ZEPEDA, JUAN ZEPEDA, JULIO RICARDO ALVAREZ MACATOMA, LEONCIO TORRES ACUNA, MARIO MORALES ROJAS, OMAR RODRIGUEZ, and ANTONIO LIMON HERNANDEZ, *individually and on behalf of others similarly situated*,

        Plaintiffs,

-against-

COUNTY-WIDE MASONRY CORP., CARBEN INDUSTRIES, INC., CARBEN CONCRETE, INC., CARBEN CONSTRUCTION INC., ANTHONY DERASMO, ANTHONY LOGIUDICE, RONALD BROWNING, and MARTIN DOE a/k/a PERU,

        Defendants.

CARBEN INDUSTRIES, INC.,

        Third Party Plaintiff,

-against-

BATRUME INDUSTRIES, INC. and COUNTY-WIDE CONSTRUCTION CORP.,

        Third Party Defendants.

No. 19 Civ. 8808 (AT)

**OPINION AND ORDER**

ANALISA TORRES, District Judge:

    By order dated September 29, 2023, the Court stated that it "shall issue a memorandum opinion" addressing the parties' motions. *See* ECF No. 180. This order constitutes the memorandum opinion.

    Plaintiffs, construction workers on two projects in Manhattan and Brooklyn, bring this action against Defendants County-Wide Masonry Corp. ("County-Wide"), Carben Industries,

Inc., Carben Concrete, Inc., Carben Construction Inc. (collectively, "Carben"), Anthony Derasmo, Anthony LoGiudice, Ronald Browning, and Martin Doe a/k/a Peru, seeking unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") §§ 190 *et seq.* and 650 *et seq.* County-Wide and Derasmo (together, the "County-Wide Defendants") and Carben, LoGiudice, and Browning (together, the "Carben Defendants") each move for summary judgment on the ground that they are not Plaintiffs' employers. County-Wide Mot., ECF No. 151; Carben Mot., ECF No. 156. The County-Wide Defendants and the Carben Defendants also cross-move for summary judgment on their indemnification claims. County-Wide Mot.; Carben Mot. For the reasons stated below, the County-Wide Defendants' motion against Plaintiffs is DENIED, and their motion against the Carben Defendants is GRANTED; the Carben Defendants' motion against Plaintiffs is DENIED, and their motion against the County-Wide Defendants is GRANTED.

## BACKGROUND[1]

County-Wide is a construction company that specializes in masonry and concrete work. County-Wide 56.1 ¶ 1, ECF No. 154. Anthony Derasmo is County-Wide's principal. *Id.* ¶ 13. Carben is a group of corporations in the construction industry. Second Am. Compl. ¶ 4, ECF No. 56; Carben Answer ¶ 4, ECF No. 87. Anthony LoGiudice and Ronald Browning are Carben's principals. Carben 56.1 at ¶ 3, ECF No. 142.

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the non-moving party. *Id.* at 69.

In March and November 2018, respectively, County-Wide was hired to perform concrete work at two construction sites: 70 Schermerhorn Street (the "Brooklyn Project") and 120 Water Street (the "Manhattan Project"). *See* County-Wide 56.1 ¶¶ 21, 33; Carben 56.1 ¶¶ 17, 19.

County-Wide then hired Carben for both projects. *See* County-Wide 56.1 ¶ 34; Carben 56.1 ¶ 18 (January 2019 contract for the Brooklyn Project); County-Wide 56.1 ¶ 22 (November 2018 contract for the Manhattan Project). Pursuant to the subcontracts, Carben agreed to provide materials and labor necessary to complete the concrete superstructure work for each project. Carben 56.1 ¶ 21. According to Derasmo, Carben "provided everything for that job," and he, as County-Wide's principal, "just did . . . the paperwork." *See* Derasmo Dep. at 28:14–29:4, ECF No. 155-1.

Carben then hired Batrume Industries, Inc. ("Batrume") to provide the labor for each project. County-Wide 56.1 ¶¶ 23, 36; Carben 56.1 ¶¶ 26–27. Carben supplied materials that were installed by Batrume. County-Wide 56.1 ¶¶ 28, 38. For each project, Carben paid Batrume, on a weekly basis, an amount equal to the cost of Batrume's labor plus ten percent for profit and overhead. Carben 56.1 ¶ 31; County-Wide 56.1 ¶¶ 25–26.

Plaintiffs performed construction work at the Brooklyn and Manhattan Projects. County-Wide 56.1 ¶¶ 59, 64, 72, 77, 82; Carben 56.1 ¶¶ 7(d), 8, 10–11, 15. All nine Plaintiffs testified that they worked for either County-Wide or "Country-Wide."[2] Carben 56.1 ¶¶ 7(e), 8, 9(a), 10–12, 13(a)–(b), 14(a), 15. Mota Bautista, Ovando Zepeda, Acuna, Morales Rojas, and Rodriguez stated that they had not heard of Batrume during their employment at the Brooklyn or Manhattan

---

[2] Plaintiffs Mota Bautista, Ovando Zepeda, Acuna, Morales Rojas, and Rodriguez were deposed by oral examination. *See* ECF Nos. 155-4 to -8. Plaintiffs Bautista, Zepeda, Alvarez Macatoma, and Hernadez submitted supplemental interrogatory responses in lieu of deposition and testified only that they believed that County-Wide employed them on the Brooklyn and Manhattan Projects. *See* ECF Nos. 164-1 to -4. Although certain Plaintiffs misspelled the company's name as "Country-Wide," in this opinion, the Court nevertheless refers to the company by its proper name, "County-Wide."

3

Projects.  Pls. Statement of Additional Facts ("Pls. 56.1") at 25 ¶ 1, ECF No. 154.[3]  Mota Bautista, Ovando Zepeda, Morales Rojas, and Rodriguez said that they had either not heard of or were not employed by Carben.  Carben 56.1 ¶¶ 7(f), 9(b), 13(f), 14(b).  Plaintiffs wore badges labeled "County-Wide" on the Brooklyn Project.  County-Wide 56.1 ¶¶ 43–44.  Morales Rojas and Rodriguez said that they wore t-shirts bearing the name "County-Wide."  Carben 56.1 ¶¶ 13(d), 14(e).

Mota Bautista, Ovando Zepeda, Acuna, Rojas, and Rodriguez testified that they were supervised by a man named Peru, "Perucho," or Martin Peru ("Peru").  Carben 56.1 ¶¶ 7(b), 9(d), 12(b), 13(e), 14(f); County-Wide 56.1 ¶¶ 59, 65, 74, 79.  Mota Bautista, Ovando Zepeda, Acuna, Rojas, and Rodriguez stated that Peru was responsible for hiring, supervising, and paying them.  Carben 56.1 ¶¶ 7(d), 9(d), 12(b)–(e), 13(b)–(c), 14(h); County-Wide 56.1 ¶¶ 60–62, 66–70, 76, 84–85.  The identity of Peru's employer is disputed.  County-Wide 56.1 ¶¶ 54, 56, 83; *see infra* Section I.A.

## LEGAL STANDARD

I. Summary Judgment

Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

---

[3] Plaintiffs included a statement of additional facts that was appended to the end of both County-Wide and Carben's 56.1 statements of facts.  In this order, the Court cites only to the statement appended to County-Wide's statement.

The moving party initially bears the burden of demonstrating the absence of a genuine dispute of material fact by citing evidence in the record. *See Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro, Vt.*, 287 F.3d 162, 165 (2d Cir. 2002). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In doing so, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "While Rule 56 does not obligate a court to perform an independent review of the record where a party does not adequately respond to a motion for summary judgment, nothing prevents the Court from exercising its discretion to conduct such a review." *Azor v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 2235, 2012 WL 4809165, at *3 (S.D.N.Y. Oct. 9, 2012) (citation omitted).

On a motion for summary judgment, courts view the record in the light most favorable to the non-moving party. *Koch*, 287 F.3d at 165.

II.     "Employer" under the FLSA

The FLSA imposes liability on any "employer" who violates its minimum wage, overtime, and recordkeeping provisions. *See* 29 U.S.C. § 216(b), (e)(2).[4] The statute defines "employer" as an entity "acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). An "employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1). And to "employ" is "to suffer or permit to work." *Id.* § 203(g). The

---

[4] "Courts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010); *compare* 29 U.S.C. § 203(g), *with* N.Y. Lab. Law § 2(7). The Court's FLSA analysis shall, therefore, govern its NYLL analysis.

5

FLSA's definition of "employer" is written with "striking breadth," reflecting Congress' intent to break from the common-law definitions of employment. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (cleaned up). The FLSA does not "automatically exempt entities that use independent contractors to provide labor from complying with the statute's wage and hour provisions." *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 149 (4th Cir. 2017). "An individual may simultaneously have multiple employers for purposes of the FLSA, in which event, all joint employers are responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (cleaned up).

An employment relationship exists when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *accord Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). The Second Circuit has articulated two primary versions of the economic-realities test.

The first measures whether an employer exercised "formal control" over a worker. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003) (using the term "formal control" to describe the *Carter* test). The test examines whether the employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12.

The formal control test "defines employment more narrowly than [the] FLSA requires," so "satisfying this test is sufficient, but not necessary" to show employment. *Greenawalt v. AT&T Mobility, LLC*, 642 F. App'x 36, 37 (2d Cir. 2016) (summary order); *see Zheng*, 355 F.3d

6

at 70 (holding that the FLSA's definition of employment "cannot be reduced to formal control over the physical performance of another's work" (citation omitted)).  This is in part because the formal-control test "rarely permit[s] a finding of joint employment 'outside of situations involving direct corporate subsidiaries or managing administrators.'"  *Zheng*, 355 F.3d at 68 (quoting *Lopez v. Silverman*, 14 F. Supp. 2d 405, 415 (S.D.N.Y. 1998)).

Even if an entity does not satisfy the "formal control" test, it can still be deemed an "employer" under the FLSA if it had "functional control" over the workers—the second test outlined by the Second Circuit.  *Zheng*, 355 F.3d at 72–76.  The functional-control test requires courts to weigh six "nonexclusive and overlapping factors":

> (1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the alleged employers.

*Granda v. Trujillo*, No. 18 Civ. 3949, 2019 WL 367893, at *5 (S.D.N.Y. Jan. 30, 2019) (citing *Zheng*, 355 F.3d at 71–72) (cleaned up).  The functional-control test is "most relevant in the context of subcontractor relationships."  *Id*.  The test seeks to pierce contracting arrangements that have "no substantial, independent economic purpose" and that are "most likely a subterfuge meant to evade the FLSA or other labor laws."  *Zheng*, 355 F.3d at 72–73.

The Second Circuit's tests "state no rigid rule" but rather provide a set of factors to "ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA."  *Barfield*, 537 F.3d at 143.  Accordingly, employment must be determined "on a case-by-case basis by review of the totality of the circumstances."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir.

2013). Because this is necessarily "fact-intensive," awards of summary judgment are "rare." *Gil v. Pizzarotti, LLC*, No. 19 Civ. 3497, 2021 WL 1178027, at *6 (S.D.N.Y. Mar. 29, 2021).

## DISCUSSION

I. County-Wide and Carben's Motions for Summary Judgment Against Plaintiffs

The parties agree that Peru was in charge of Plaintiffs' hiring, conditions of work, and payment. *See* Carben 56.1 ¶¶ 7(d), 9(d), 12(b)–(e), 13(b)–(c), 14(h); County-Wide 56.1 ¶¶ 60–62, 66–70, 76, 84–85. But, they dispute whether Peru worked for County-Wide or Batrume. The Court concludes that triable issues of fact as to the identity of Peru's employer preclude a grant of summary judgment.

County-Wide first claims that Peru was not employed by County-Wide, County-Wide 56.1 ¶ 56, as Derasmo, its principal, neither directed Peru's work nor discussed Plaintiffs with Peru, *id.* ¶ 57. But, Plaintiffs have set forth sufficient evidence to call into question this assertion. Plaintiffs Rodriguez and Mota Bautista both stated that Peru wore clothing identifying him as a County-Wide worker. Rodriguez Dep. at 17:12–17, ECF No. 155-4; Mota Bautista Dep. at 28:18–23, ECF No. 155-5. Rodriguez, Mota Bautista, and Morales Rojas also testified that Peru worked for County-Wide. Rodriguez Dep. at 16:16–17; Mota Bautista Dep. 28:15–17; Morales Rojas Dep. 13:1–6, ECF No. 155-8.[5] Moreover, Plaintiffs—whom Peru hired, supervised, and paid—uniformly stated that they worked for County-Wide at the Brooklyn and Manhattan Projects. *E.g.*, Carben 56.1 ¶¶ 7(e), 8, 9(a), 10–12, 13(a)–(b), 14(a), 15. Therefore, a reasonable jury could find that Peru worked for County-Wide.

---

[5] Morales Rojas also stated that Peru told him that Peru worked for County-Wide. Morales Rojas Dep. 13:7–9, ECF No. 155-8. This hearsay statement is also inadmissible.

County-Wide claims that Peru worked for Batrume, County-Wide 56.1 ¶ 54, but its evidence in support of this claim—the deposition testimony of its principal, Carben's principal and one Plaintiff—is insufficient. County-Wide's principal, Derasmo, testified that he does not know whether Peru worked for Batrume. Derasmo Dep. at 65:4–7. Carben's principal, LoGiudice, stated that he had an "understanding" from a third party that "[m]aybe [Peru] was employed by Batrume." LoGiudice Dep. at 39:3–17, ECF No. 155-2. A hearsay statement, such as LoGuidice's, is inadmissible for the truth of the matter and, therefore, cannot be considered at summary judgment. *See Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, 507 F. Supp. 3d 547, 571 (S.D.N.Y. 2020). Finally, Plaintiff Rodriguez, whom County-Wide cites in support of its claim, County-Wide 56.1 ¶ 54, did not recall the name "Batrume," Rodriguez Dep. at 20:13–15, and testified that Peru worked for County-Wide, *id.* at 16:16–17. County-Wide, therefore, has not established that Peru worked for Batrume.

However, the Court cannot definitively conclude that Batrume did not employ Peru. County-Wide subcontracted labor and work on both projects to Carben, *see* County-Wide 56.1 ¶¶ 22, 35, and Carben then subcontracted labor to Batrume, *see* Carben 56.1 ¶¶ 23–27. Moreover, County-Wide's principal, Derasmo, states that when he spoke to Batrume's principal, Michael Garrido, Peru was always present. Derasmo Dep. at 64:18–65:3; *see* Carben 56.1 ¶ 25 (identifying Garrido as signing the Carben-Batrume contract on Batrume's behalf).

The Court, therefore, agrees with Plaintiffs that "[t]here is no consistent, undisputed answer [regarding] . . . who[] Peru worked for." Pl. County-Wide Opp. at 9–10, ECF No. 163; Pl. Carben Opp. at 9, ECF No. 165. On this record, Peru may have worked for County-Wide or Batrume.

If Peru were County-Wide's employee, a reasonable jury could find that Peru's actions in hiring, supervising, and paying Plaintiffs were in service of—and therefore attributable to—County-Wide. 29 U.S.C. § 203(d) (defining employer as "anyone acting directly or indirectly in the interest of an employer in relation to an employee"); *see Irizarry*, 722 F.3d at 116 (employer "was not personally responsible for the FLSA violations that led to this lawsuit, but . . . nonetheless profited from them."). In such a scenario, because Peru controlled Plaintiffs' hiring, work schedules and employment conditions, and payment, three of the four formal-control factors weigh in Plaintiffs' favor, and the other would be inconclusive, precluding summary judgment in County-Wide's favor. *See Barfield*, 537 F.3d at 145.[6]

Accordingly, the County-Wide Defendants' motion for summary judgment against Plaintiffs is DENIED.

On the other hand, if Peru worked for Batrume, then Plaintiffs would be a part of Batrume's workforce. Carben disclaims responsibility for paying Batrume's employees. Carben 56.1 ¶¶ 28, 31. But, the FLSA does not automatically exempt from liability entities that use independent contractors. *Salinas*, 848 F.3d at 149. Indeed, the Second Circuit's six-factor functional-control test requires the Court to determine whether the Carben-Batrume contract may be a subterfuge to avoid compliance with wage-and-hour laws. Without evidence demonstrating that Batrume serviced other clients or had other employees beyond Plaintiffs, a reasonable jury

---

[6] The Second Circuit has instructed that "satisfying [the formal-control] test is sufficient" to demonstrate employment. *Greenawalt*, 642 F. App'x at 37. Because the Court has found that a triable issue of fact exists as to whether County-Wide formally controlled Plaintiffs, the Court need not examine whether it also functionally controlled them. At trial, of course, Plaintiffs are free to pursue either theory of control. *See infra* pages 10–14 (applying functional-control test to Carben); *see also Cuevas v. L.I.C. Builders Ltd.*, No. 21 Civ. 4768, 2022 WL 1137111, at *4 (E.D.N.Y. Apr. 18, 2022) (if plaintiffs referred to their employer by a certain name, that weighed in favor of an employment relationship); *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 456 (S.D.N.Y. 2019) (if workers wore clothing of particular employer, that weighed in favor of employment relationship).

employing this test could find that Carben functionally controlled Batrume's workforce.[7] *See Zheng*, 355 F.3d at 72–76.

Two factors weigh against such a finding. Regarding the first factor, there is no evidence that Carben's premises and equipment were used for work by Batrume's employees at the Manhattan and Brooklyn Projects. Carben admits that it "suppl[ied] the materials" and hired Batrume to perform the labor for the job. Carben 56.1 ¶ 24. These materials, however, are "not tools used to complete the service or finish the product; they are uncompleted versions of the service or product" and do not indicate control. *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 132 (S.D.N.Y. 2011). Further, as to the fifth factor, there is no evidence that Carben supervised Batrume's employees. *See* Browning Dep. 26:22-24, 38:6-9; LoGiudice Dep. 31:4-10.

However, the other factors favor Plaintiffs. Notably, the labor provided by Batrume was integral to Carben's ability to complete the Brooklyn and Manhattan Projects. *See* Carben 56.1 ¶¶ 21, 23–24; *see Fernandez v. HR Parking, Inc.*, 407 F. Supp. 3d 445, 458 (S.D.N.Y. 2019) (when contracted workers are "critical to the defendants['] business and there is no explanation as to how the day-to-day operations could run without [the workers]," such an arrangement can indicate subterfuge). Although Carben has previously contracted for labor when installing materials, Carben 56.1 ¶ 24, Carben is itself a construction company and has not sufficiently explained why it needed to hire outside workers on the Manhattan and Brooklyn Projects. *See*

---

[7] The Court finds, pursuant to the Circuit's four-factor *Carter* test, that Carben did not formally control the employment of Batrume's workforce. No party claims that Carben directly employed Peru. There is no evidence that Carben had the authority to hire or fire employees of Batrume, *see* Browning Dep. 37:22–38:9, ECF No. 155-3, and the contract between Carben and Batrume is silent on this issue, *see generally* ECF No. 155-10. There is no evidence that Carben supervised Batrume's employees. *See* Browning Dep. 26:22-24, 38:6-9; LoGiudice Dep. 31:4-10. Regarding rates of payment, Carben paid Batrume for its costs plus a ten-percent overhead for profit. Carben 56.1 ¶ 31. Carben did not receive a breakdown by hour or employee as to employee pay. *See id.*; ECF No. 142-19. Carben did not determine the rates of payment for any of Batrume's employees. Carben 56.1 ¶ 31. Finally, regarding personnel records, Carben did not know who worked for Batrume. *See* Browning Dep. 37:22–38:5.

Browning Dep. at 34:11–23 (noting Carben's desire to avoid the "things that come along with employees"). In *Zavala v. PEI Electrical Services Group, Inc.*, The Honorable Paul A. Engelmeyer adopted a report and recommendation authored by the Honorable Gabriel W. Gorenstein which addressed an analogous situation: a contractor was brought on to do electrical work and "elected to subcontract out that electrical work rather than give the work to its own employees." No. 20 Civ. 9437, 2022 WL 2312794, at *11 (S.D.N.Y. June 28, 2022), *report & recommendation adopted*, 2022 WL 2712853 (S.D.N.Y. July 13, 2022). Although Judge Gorenstein noted that subcontracting was ubiquitous in the construction industry, he found that the defendant did not offer a "particular reason" for the subcontract, and the factor therefore leaned toward the plaintiff employees.[8] *Id.* The Court agrees with Judge Gorenstein's reasoning, and concludes that the third factor of the Second Circuit's test tilts toward Plaintiffs.

The remaining functional-control factors are (1) whether Batrume's workforce was bound to the Carben worksites, (2) whether Batrume's workforce would have continued working on the worksite even if Carben hired a different contractor from Batrume, and (3) whether Batrume's workforce worked exclusively or predominantly for Carben. *Granda*, 2019 WL 367893, at *5. Although the parties offer limited insight into Batrume's operations, the record favors Plaintiffs on all three factors.

---

[8] Courts also sometimes consult "industry custom and historical practice" in determining this factor, although the Circuit has noted that these are subject to "conflicting inferences." *Zheng*, 355 F.3d at 73–74. Although common outsourcing practices are "unlikely to be a mere subterfuge to avoid complying with labor laws," the prevalence of a particular practice might "be attributable to widespread evasion of labor laws*." Id.* The New York Court of Appeals has noted the prevalence of contracting in the New York construction industry and cautioned against rendering most general contractors the joint employers of their subcontractor's employees. *See Ovadia v. Off. of Indus. Bd. of Appeals*, 19 N.Y.3d 138, 144 (2012). On the other hand, misclassification of workers often benefits the employer by "avoid[ing] liability" for labor-law violations but still exerting significant power over workers. *Leevson v. Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 515–16 (E.D.N.Y. 2017), *reversed in part on separate grounds*, 770 F. App'x 577 (2d Cir. 2019). Indeed, Plaintiffs note that, soon after their employment, the New York legislature amended the NYLL to make general contractors in the construction industry liable for the unpaid wages of their subcontractors. *See* Pl. Carben Opp. at 12, ECF No. 165 (citing N.Y. Lab. Law § 198-e(5)). This evidence could buttress a conclusion that the contracting arrangement here was a subterfuge.

First, Carben claims that Batrume could have sent its employees to other worksites and that Batrume was a "concrete contractor." Carben 56.1 ¶ 30. But, Carben offers no evidence that Batrume had other clients or even other employees. The only evidence before the Court about Batrume's workforce—assuming that Peru and, therefore, Plaintiffs worked for Batrume—is Plaintiffs' experience, and Plaintiffs uniformly stated that they had not heard of Batrume. Pls. 56.1 at 25 ¶ 1. Carben's assertion is, therefore, "theoretical." *Greenawalt*, 642 F. App'x at 39. A reasonable jury could find that Batrume could not have moved laborers who were unacquainted with the company to another worksite.

Similarly, to determine whether Batrume's workforce would have continued working on the Manhattan and Brooklyn Projects even if Carben hired a different company, the only evidence before the Court is Plaintiffs' testimony. Plaintiffs did not know Batrume's name. Therefore, the Court cannot conclude as a matter of law that Plaintiffs worked at the Manhattan and Brooklyn Projects only on Batrume's behalf. *See Chen v. Street Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 286 (E.D.N.Y. 2005) (holding that this factor favored workers where "the entities that plaintiffs worked for were in flux," changing their names without notifying plaintiffs and hiding their ownership).

Finally, Plaintiffs worked full time at the Brooklyn and Manhattan Projects—in other words, exclusively on projects with a Carben contract. Pl. Carben Opp. 14; *see Zavala*, 2022 WL 2312794, at *11.

Four factors favor Plaintiffs, and two favor Carben. The Second Circuit has upheld jury verdicts in favor of FLSA plaintiffs where only three of the functional-control factors weighed in their favor and three weighed against them. *Zheng v. Liberty Apparel Co., Inc.*, 389 F. App'x 63, 65 (2d Cir. 2010) (summary order). A reasonable jury could, therefore, find that Carben

13

controlled Batrume's workforce, particularly because Plaintiffs—whose testimony constitutes the only evidence of Carben and Batrume's relationship in practice—were not acquainted with Batrume.

A district court is also free to consider any other factors that it deems relevant to its assessment of the economic realities. *Zheng*, 355 F.3d at 71–72. Carben, which approved Batrume's weekly labor costs, was "in a position to be aware of and prevent the violation of the overtime laws." *Fernandez*, 407 F. Supp. 3d at 460. And, the layers of contracting relationships at the Brooklyn and Manhattan Projects could mask violations of such laws. *See Chen*, 364 F. Supp. 2d at 286 (noting that the difficulty of determining contractors' ownership and purpose could indicate subterfuge); *Lin v. Great Rose Fashion, Inc.*, No. 08 Civ. 4778, 2009 WL 1544749, at *15–16 (E.D.N.Y. June 3, 2009) (same). These factors also counsel against an award of summary judgment.

Accordingly, the Carben Defendants' motion for summary judgment against Plaintiffs is DENIED.

II. Carben and County-Wide's Cross-Claims for Indemnification

Carben moves for summary judgment on County-Wide's cross-claims for common-law and contractual indemnification. Carben Mot.; *see* ECF No. 80 at 38–45. County-Wide moves for summary judgment on Carben's cross-claim and its third-party claim against County-Wide for common-law indemnification. County-Wide Mot.; *see* ECF No. 87 at 27–32.

There is no right to contribution or indemnification for any employer found liable under the FLSA. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999). Employers cannot recast their claims as claims for state-law indemnification, *id.*, or breach of contract claims, *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 327–28 (S.D.N.Y. 2001). "Allowing

indemnification in cases such as this would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute." *Id.* at 328.  The same is true of the NYLL.  *Garcia v. Cloister Apt Corp.*, No. 16 Civ. 5542, 2018 WL 1353274, at *2 (S.D.N.Y. Mar. 15, 2018).  Plaintiffs' claims arise only under the FLSA and the NYLL.  Therefore, neither the Carben Defendants nor the County-Wide Defendants can sustain an indemnification claim in the context of this action.  Accordingly, their respective motions for summary judgment against each other are GRANTED.

## CONCLUSION

For the foregoing reasons, the County-Wide Defendants' motion for summary judgment against Plaintiffs is DENIED, and its motion against the Carben Defendants is GRANTED.  The Carben Defendants' motion for summary judgment against Plaintiffs is DENIED, and its motion against the County-Wide Defendants is GRANTED.

By separate order, the Court shall refer the matter for settlement.  In due course, the Court shall set a trial date and related pre-trial deadlines on Plaintiffs' claims.

SO ORDERED.

Dated: January 4, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge